STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**Mark S.,**
**Petitioner Below, Petitioner**

**FILED**

**March 7, 2016**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-0728** (Kanawha County 14-P-639)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mark K. S., by counsel Jennifer D. Roush, appeals the Circuit Court of Kanawha County's July 1, 2015, order denying his petition for writ of habeas corpus.[1] Respondent David Ballard, Warden, by counsel Shannon Frederick Kiser, filed a response. On appeal, petitioner alleges that the circuit court erred in denying his habeas petition on the ground of ineffective assistance of counsel and finding that he was competent during the plea negotiations.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2008, a Kanawha County grand jury indicted petitioner on one count of first-degree sexual assault, two counts of first-degree sexual abuse, and three counts of sexual abuse by a parent, guardian, or custodian. Thereafter, petitioner pled guilty to one count of first-degree sexual assault and one count of sexual abuse by a parent, guardian, or custodian. The circuit court sentenced petitioner to a term of incarceration of fifteen to thirty-five years for first-degree sexual assault and a consecutive term of ten to twenty years for sexual abuse by a parent, guardian, or custodian.

In December of 2014, petitioner filed a petition for writ of habeas corpus alleging that he received ineffective assistance of trial counsel and lacked the mental competency at the time of his guilty plea to knowingly and intelligently enter a guilty plea. The circuit court held an

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.,* 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990).

omnibus evidentiary hearing in April of 2015, during which the circuit court heard testimony from petitioner and his trial counsel. According to petitioner's testimony, he voluntarily arranged to meet with a detective wherein he gave an inculpatory statement regarding the underlying crimes. Petitioner testified that he was aware that he did not have to meet with the detective, that he disclosed his mental health issues to his trial counsel, and confirmed that he gave a consistent inculpatory statement to the probation department as part of his presentence report.[2] Trial counsel testified that he did not request a psychological evaluation because he felt that petitioner was perfectly competent at the time of his representation and had memory of the past events. Further, trial counsel stated that he "didn't see anything in his description that would go towards a defense of a mental illness or any kind of criminal responsibility issues relating to the case." Ultimately, the circuit court denied petitioner's petition for writ of habeas corpus by order entered July 1, 2015. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner alleges that the circuit court erred in finding that he received effective assistance of counsel and finding that he was competent at the time he entered his plea agreement. We do not agree.

Upon our review and consideration of the circuit court's order, the parties' arguments, and the record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on this alleged error, which was also argued below. Indeed, the circuit court's order includes well-reasoned findings and conclusions as to the assignments of error raised on appeal. Given our conclusion that the circuit court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignment of error raised herein and direct the Clerk to attach a copy of the circuit court's July 1, 2015, "Final Order" to this memorandum decision.

For the foregoing reasons, we affirm.

---

[2]Petitioner was involuntarily committed to Mildred Bateman Hospital for suicidal thoughts, depression, and substance abuse/dependence approximately six months before being indicted. After receiving approximately fourteen days of inpatient therapy, petitioner was discharged as being stabilized on medication.

Affirmed.

**ISSUED:  March 7, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
MARK K. S.
        Petitioner,

v.

                                   Civil Action No. 14-P-639
                                   Judge Louis H. Bloom

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,
        Respondent.

## FINAL ORDER

On April 8, 2015, the Petitioner, Mark S.      by counsel, Jennifer Roush, and the

Respondent, by counsel, Fred Giggenbach, appeared for an omnibus hearing on the Petitioner's

*Petition for Writ of Habeas Corpus (Petition)* filed on December 16, 2014. This is the

Petitioner's first habeas. The *Petition* claims (1) the Petitioner lacked mental competency at

various stages in his underlying criminal proceeding (Criminal Action No. 08-F-417), and (2)

Petitioner's trial counsel was ineffective for failing to request a psychological evaluation.

Specifically, the Petitioner's *Losh List* raises the following grounds for habeas corpus relief: (1)

involuntary guilty plea; (2) mental competency at the time of the crime; (3) mental competency

at the time of trial; (4) incapacity to stand trial due to drug abuse; (5) ineffective assistance of

trial counsel; (6) claim of incompetence at time of offense; and (7) failure of the trial judge to

order a psychological evaluation.[1]

---

[1] Omnibus Hr'g Tr. 13:12–24, 14:1–7, Apr. 8, 2015.

1

## FINDINGS OF FACT

1. The Petitioner is an inmate at Mt. Olive Correctional Complex.[2] The Respondent, David Ballard, is the Warden of Mount Olive Correctional Complex.

2. In May 2008, the Kanawha County grand jury indicted the Petitioner, Mark S. ___, with one count of first degree sexual assault (count 1), two counts of first degree sexual abuse (counts 3 and 5), and three counts of sexual abuse by a parent, guardian, or custodian (counts. 2, 4, 6).[3]

3. These offenses occurred in late 2005, early 2006.[4] The victim was an eight-year old girl who stayed for a month at the Petitioner's house.[5]

4. On August 9, 2007, the Petitioner gave an incriminating statement to Detective Carper, who was investigating the Petitioner on sexual abuse allegations. In his statement, the Petitioner admitted to sexually abusing and assaulting the victim while she was in his care.[6]

5. On August 14, 2007, the Petitioner was arrested with felony warrants and released the same day.

6. On August 21, 2007, a preliminary hearing was held in the Kanawha County Magistrate Court, and the Magistrate found probable cause.

7. On November 14, 2007, after the Petitioner was arrested, but before he was indicted, the Petitioner's father filed an *Application for Involuntary Custody for Mental Health Examination* seeking to hospitalize the Petitioner.[7] A licensed examining psychologist, James Merrill, examined the Petitioner, found reason to believe that the Petitioner was mentally ill with

---

[2] Pet. 1; Omnibus Hr'g Tr. 10:16–17.
[3] Felony Indictment No. 08-F-417, May Term 2008; *see* W. Va. Code §§ 61-8B-3, 61-8B-7, 61-8D-5; Omnibus Hr'g Tr. 28:7–9.
[4] Detective Carper Test., Grand Jury Tr. 6:19–23, July 30, 2008.
[5] *Id.* at 6–7; Pet'r's Statement to Police at p. 2, Aug. 9, 2007.
[6] Pet'r's Statement to Police at p. 3–6, 8–11, 14–18, 20–21, 23–24, Aug. 9, 2007.
[7] *See* In Re Involuntary Hospitalization of Mark K. S. , Case No. 07-MH-1163.

2

00002

depression and suicidal ideation, and recommended hospitalization.[8] The Mental Hygiene Commissioner ordered the Petitioner be committed into the custody of the WV DHHR at Mildred Mitchell-Bateman Hospital for further examination and treatment.[9]

8. From November 14, 2007, to November 30, 2007, the Petitioner received mental health treatment at Bateman Hospital for depressive disorder, psychotic disorder, and poly-substance abuse/dependence (alcohol, marijuana, and cocaine).[10] On November 30, 2007, Bateman Hospital discharged the Petitioner after finding the following:

> The patient was not entertaining suicidal ideations any more. The patient was not depressed any more. He denied any active suicidal or homicidal ideations. He was not complaining of hallucinations any more. He was not paranoid any more. He was detoxified from alcohol and substances. He was able to attend his MICA sessions and gain some insight into his condition. Thus, when he was stabilized on medications we were able to finally discharge him back to the community on November 30, 2007, with followup appointments. . . . [H]e gained insight into his condition and toward the end of November he stabilized on his medications. Thus, we were then able to discharge him on November 30, 2007, with medications. . . . For followup, he was referred to . . . Prestera East . . . .[11]

9. The Court appointed Assistant Public Defender, John P. Sullivan (Mr. Sullivan), to represent the Petitioner in the underlying criminal matter, Criminal Action No. 08-F-417.

10. On October 6, 2008, the Petitioner pled guilty to Count One, First Degree Sexual Assault, and Count Four, Sexual Abuse by a Parent, Guardian, or Custodian, as contained in the indictment. As part of the plea agreement with the State, the State recommended consecutive sentences, but agreed not to file a recidivist action, pursuant to W. Va. Code § 61-11-18(a).[12]

---

[8] Certificate of Licensed Examiner, Case No-MH-1163.
[9] Order: Probable Cause for Involuntary Hospitalization for Examination, Case No. 07-MH-1163, Nov. 14, 2007.
[10] Ex. A, Discharge Summary for Bateman Hospital, attached to Pet. for Writ of Habeas Corpus.
[11] Id.
[12] Plea Hr'g Tr. 2-3, Oct. 6, 2008. The Petitioner had a prior felony conviction for Wanton Endangerment, which under the recidivist statute, W. Va. Code § 61-11-18(a), the Petitioner's minimum term of his indeterminate sentences would have been doubled if the prosecutor would have filed a recidivist.

00003

11. Accordingly, the Court sentenced the Petitioner to not less than 15 years nor more than 35 years and not less than 10 years nor more than 20 years on each count, respectively, to be served consecutively.[13]

12. While in prison, the Petitioner sent Mr. Sullivan letters requesting "sentence reconsideration."[14] On April 26, 2012, Mr. Sullivan filed a *Motion for Modification of Sentence* on behalf of the Petitioner. On June 15, 2012, the Petitioner filed a *Motion for Appointment of New Counsel*, requesting that the Court appoint him new counsel for the purpose of filing another motion for reconsideration of his sentence. The Court considered the April 26, 2012, *Motion*, found the Court's original sentence proper, and denied the *Motion* on June 26, 2012.[15]

13. On August 21, 2013, the Court appointed Jennifer Roush to represent the Petitioner in filing the instant *Petition*.

14. On April 8, 2015, the parties appeared before the Court for an omnibus hearing on the *Petition*. In support of his *Petition*, the Petitioner presented the testimony of two witnesses, himself and Mr. Sullivan.

15. The Petitioner testified that, prior to the omnibus hearing, Mrs. Roush met with him multiple times at Mt. Olive to discuss his habeas case. During those meetings, she reviewed with him the *Losh List* of potential grounds that he could assert in his habeas petition.[16] The Petitioner testified that he understood any grounds not asserted or raised by him in the habeas proceeding before the Court would be forever waived.[17]

---

[13] Sentencing Hr'g Tr. 12:16–21, Nov. 13, 2008.
[14] Att. A, Mot. for Appointment of New Counsel, June 15, 2012.
[15] Order Denying Defendant's "Motion for Modification of Sentence," Criminal Action No. 08-F-417, June 26, 2012.
[16] Omnibus Hr'g Tr. 11:13–24, 12:1.
[17] *Id.* at 12:9–16.

4

00004

16. The Petitioner testified that he is asserting the following grounds for habeas relief: (1) involuntary guilty plea; (2) mental competency at the time of the crime; (3) mental competency at the time of trial; (4) incapacity to stand trial due to drug abuse; (5) ineffective assistance of trial counsel; (6) claim of incompetence at time of offense; and (7) failure of the trial judge to order a psychological evaluation.[18] All of these grounds are encompassed in the Petitioner's claim of ineffective assistance of trial counsel and his claim that he lacked the mental competency at various stages in Criminal Action No. 08-F-417.

17. The Petitioner asserts that he was not mentally competent when he provided the incriminating statement to the police. The Petitioner testified that the night before and the morning of his statement to the police, he was "drinking and doing cocaine and smoking pot and whatever else."[19] The Petitioner testified he went to the police station on his own accord, and that, upon arriving, the police told him he could leave anytime.[20]

18. The Petitioner alleges that Mr. Sullivan provided ineffective assistance of counsel by (1) failing to request a psychological evaluation of the Petitioner to determine his mental competency at the time he committed the underlying crimes and at the time of his guilty plea, and (2) failing to investigate the circumstances surrounding the Petitioner's incriminating statement and failing to file a motion to suppress the statement.

19. At the omnibus hearing, the Petitioner testified he met with Mr. Sullivan four or five times for about forty-five minutes each time prior to pleading guilty.[21] The Petitioner told Mr.

---

[18] Omnibus Hr'g Tr. 13:12–24, 14:1–7.
[19] Id. at 20:1–6.
[20] Id. at 19:14–24; 20:15–24, 21:1–5.
[21] Id. at 31:2–20.

00005

Sullivan he had been hospitalized at Bateman Hospital for mental health issues and severe drug abuse and depression.[22]

20. Mr. Sullivan did not request a psychological evaluation or review the Petitioner's hospital records.[23] Mr. Sullivan explained

> I felt that he was perfectly competent at the time that I represented him to understand the case. I knew that he had a memory of past events. He did discuss with me problems with depression and a great deal of drug use at the time of the alleged events, but I didn't see anything in his description that would go towards a defense of a mental illness or any kind of criminal responsibility issues relating to the case.[24]

21. Regarding the statement, the Petitioner testified that Mr. Sullivan advised him, "They're going to use it no matter what, and there's nothing you can do about it."[25]

22. Mr. Sullivan reviewed the Petitioner's incriminating statement with the Petitioner, and Mr. Sullivan reviewed the video recording of the statement.[26] Mr. Sullivan testified that, because the Petitioner was speaking clearly and had a normal demeanor in the video, he did not challenge the statement or request a psychological evaluation.[27] Mr. Sullivan further testified that, if the matter would have proceeded to trial, he would have challenged the statement, but "there wasn't any reason to believe that that statement would not be admitted into evidence."[28]

23. Mr. Sullivan reviewed the case with the Petitioner and explained the evidence, the indictment, the charges, and various plea possibilities.[29]

---

[22] *Id.* at 28–29.
[23] *Id.* at 73.
[24] *Id.* at 74:6–14.
[25] *Id.* at 32:17–19.
[26] *Id.* at 74–75.
[27] *Id.* at 75.
[28] *Id.* at 75:6–8.
[29] *Id.* at 71–73.

00006

# DISCUSSION

## *Lack of Mental Capacity*

24. The Petitioner asserts that his due process rights were violated as a result of him being allowed to plead guilty when he was mentally incompetent.

25. The Fourteenth Amendment of the United States Constitution and Article 3, Section 10 of the West Virginia Constitution prohibit the prosecution of mentally incompetent criminal defendants and provide substantive and procedural due process rights against such prosecution.[30] Under West Virginia law, "a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him" to be competent to stand trial.[31]

26. The Petitioner's Bateman Hospital records state that the Petitioner no longer had suicidal ideations, paranoia, depression, and hallucinations when he was discharged. The records indicate that the Petitioner was stable when he took his medications.[32] At the plea hearing, the Petitioner stated that he was taking his medications and had been visiting Prestera as ordered by Bateman Hospital.[33] At the plea hearing, the Petitioner testified that he was alert and aware of what rights he was waiving by pleading guilty, and the Petitioner corroborated his statement given to police on August 9, 2007, describing the events consistently.[34] Further, Mr. Sullivan reviewed the evidence, charges, indictment, and plea terms with the Petitioner and met with the Petitioner four or five times prior to the Petitioner's plea of guilty. Thus, the Court finds that the Petitioner, at the time of his plea, exhibited a sufficient, present ability to consult with his lawyer with a

---

[30] *See* syl. pt. 5, *State v. Hatfield*, 186 W. Va. 507, 413 S.E.2d 162 (1991).
[31] Syl. pts 1 & 2, *State v. Cheshire*, 170 W. Va. 217, 292 S.E.2d 628 (1982).
[32] Ex. A, Discharge Summary for Bateman Hospital, attached to Pet. for Writ of Habeas Corpus.
[33] S. Test., Plea Hr'g Tr. 10–14, Oct. 6, 2008.
[34] *Iu.*

7

00007

reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him.

*Ineffective Assistance of Trial Counsel*

27. Next, the Petitioner asserts that Mr. Sullivan provided ineffective assistance of counsel.

28. "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[35]

29. With regard to the first prong of the test, a petitioner must first "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[36] The petitioner's burden in this regard is heavy because there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[37]

30. "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. . . ."[38] Therefore, a reviewing court must ask "whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue."[39] Moreover, counsel's strategic

---

[35] Syl. pt. 5, *State v. Miller*, 194 W. Va. 3, 6, 459 S.E.2d 114, 117 (1995).
[36] *State ex rel. Myers v. Painter*, 213 W. Va. 32, 35, 576 S.E.2d 277, 280 (2002) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066); *Miller*, 194 W. Va. at 15, 459 S.E.2d at 126.
[37] *Id.* at syl. pt. 4 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).
[38] Syl. pt. 6, *Miller*, 194 W. Va. 3, 459 S.E.2d 114.
[39] *Id.*

8

00008

decisions must rest upon a reasonable investigation enabling him or her to make informed decisions about how to represent criminal clients.[40]

31. With regard to the second prong of the test, a petitioner must show that counsel's performance, if deficient, adversely affected the outcome in a given case.[41] Therefore, a petitioner must demonstrate that the complained-of deficiency or errors of counsel resulted in prejudice or a "reasonable probability" that, in the absence of such error, the result of the proceedings would have been different.[42]

32. Finally, in deciding an ineffective assistance of counsel claim, the Supreme Court of Appeals of West Virginia has stated that a court may dispose of such claim "based solely on a petitioner's failure to meet either prong of the [Strickland] test."[43]

33. First, the Petitioner asserts that Mr. Sullivan's failure to request a psychological evaluation of the Petitioner prior to his plea of guilty and failure to determine his mental competency to enter such plea or to commit the underlying crimes constitutes ineffective assistance of counsel at critical stages in the underlying criminal proceedings.

34. Regarding his mental competency during the commission of the underlying crimes, the Petitioner has produced no evidence other than his own testimony to support his alleged mental incompetency.[44] The Petitioner committed the underlying offenses in late 2005 and early 2006, but the Petitioner was not psychologically examined until late 2007—almost two years after the offenses occurred. Thus, the Court is unable to find that the Petitioner has met his burden of

---

[40] Syl. pt. 3, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 423 (1995).
[41] *Painter*, 213 W. Va. at 36, 576 S.E.2d at 281.
[42] *Id.*
[43] Syl. pt. 5, *Legursky*, 195 W. Va. 314, 465 S.E.2d 416.
[44] *See* Omnibus Hr'g Tr. 27:12–14.

9

00009

proof to establish that the outcome would have differed *but for* a psychological evaluation administered to determine his competency at the time of the crime.[45]

35. Regarding the Petitioner's mental competency during the plea hearing, the Bateman Hospital records attached to the *Petition* state that the Petitioner had stopped exhibiting symptoms of mental illness during his stay at the Hospital, which is why he was discharged. The Hospital records specify that, when on medications, the Petitioner is stable. At the plea hearing, the Petitioner stated that he was taking his medications and had been visiting Prestera as ordered by Bateman Hospital.[46] He testified that he was alert and aware of what rights he was waiving by pleading guilty.[47] At the plea hearing, the Petitioner corroborated his statement given to police on August 9, 2007, describing the events consistently. Thus, even if Mr. Sullivan investigated the Petitioner's mental capacity and requested a psychological evaluation, the results would not have differed because the Hospital records show that the Petitioner was stabilized while on medications and was ordered to attend and did attend Prestera during the time of his plea.

36. Next, the Petitioner asserts that Mr. Sullivan's failure to move to suppress the Petitioner's incriminating statement is ineffective assistance of counsel.

37. Under West Virginia law,

> [T]he voluntariness of a confession for due process purposes turns solely on the constitutional acceptability of the specific police conduct at issue. While the personal characteristics of a defendant may be considered in determining the admissibility of a confession under Rules 401 through 403 of the West Virginia Rules of Evidence, personal characteristics such as the mental condition or the subjective state of mind of a defendant by themselves and apart

---

[45] *See* syl., *State v. Price*, 92 W. Va. 542, 115 S.E. 393 (1922) ("[W]here the defense is insanity, to prove the conduct and conversations of the accused before and after the homicide tending to show the deranged condition of his mind, it is not error to reject the evidence of a declaration made by the accused purely self-serving in its character, and in no way indicating a deranged or disordered intellect.").

[46] S. Test., Plea Hr'g Tr. 10–14, Oct. 6, 2008.

[47] *Id.*

00010

from their relation to official or police involvement are not significant in deciding the voluntariness question.[48]

38. The Petitioner asserts he was high on cocaine when he gave the incriminating statement to police on August 9, 2012, which rendered his statement involuntary. The Petitioner also asserts that the police did not explain the severity of the allegations against him.

39. Under West Virginia law,

> When a suspect willingly goes to the police station for questioning at the request of the investigating officer, and the suspect responds that he or she wishes to give a statement despite the officer's warnings regarding the severity of the allegations against the suspect, such statement is admissible as a voluntary confession, unless the suspect can show that he or she was in custody or that the statement was not voluntary.[49]

40. Here, Detective Carper left his card at the Petitioner's residence, asking the Petitioner to come to the police station. The Petitioner read the card and, on the same day he found the card, visited the police station. No one made the Petitioner respond when he did.[50] Before asking him questions at the police station, the police told the Petitioner he was free to leave at any time.[51] Accordingly, the Court finds that he willingly visited the police station for questioning at the request of an investigating officer.

41. The record shows that the Petitioner knew the severity of the allegations against him before making his statement. At the plea hearing, the Petitioner testified that he knew the nature of the crime he committed as he was committing it. He further stated, "I knew I'd get caught."[52] At the sentencing hearing, the Petitioner stated "[b]ut when I think about what I did, it turns my stomach to think about it" and also stated that he had quit taking drugs and "won't ever get on

---

[48] Syl. pt. 3, *State v. Honaker*, 193 W. Va. 51, 454 S.E.2d 96 (1994).
[49] Syl. pt. 2, *State v. Potter*, 197 W. Va. 734, 478 S.E.2d 742 (1996).
[50] Omnibus Hr'g Tr. 19:14–19
[51] State's Ex.2, Omnibus Hr'g.
[52] S﹢     Test., Plea Hr'g Tr. 19:6–9, Oct. 6, 2008.

11

00011

[the drugs] again."[53] Thus, it is inconsequential whether or not the officers warned the Petitioner of the severity of the allegations. Accordingly, the Court finds that the Petitioner was aware of the severity of the crime to which he was confessing.

42. Lastly, the Court finds that the Petitioner's alleged intoxication does not render his confession involuntary. Under West Virginia law, intoxication at the time of interrogation does not necessarily invalidate a subsequent confession. "In determining the voluntariness of a confession, the trial court must assess the totality of all surrounding circumstances. No one factor is determinative."[54] In addition, "[m]ost courts have concluded that a claim of intoxication may bear upon the voluntariness of a defendant's confession, but, unless the degree of intoxication is such that it is obvious that the defendant lacked the capacity to voluntarily and intelligently waive his rights, the confession will not be rendered inadmissible."[55] Mr. Sullivan testified that, upon his review of the taped confession,[56] the Petitioner appeared coherent with a normal demeanor. The Court finds the same. The Petitioner states in his confession that he was trying to rectify a relationship he had with the minor that should not have happened. The Petitioner then describes in detail the sexual assault and abuse and the surrounding circumstances.[57] Further, the Petitioner has offered no evidence that he was on cocaine or otherwise intoxicated when he gave his statement. Rather, the Petitioner has consistently recounted the same story, telling the same story to the Court during the plea hearing as he told Detective Carper when the Petitioner confessed at the police station. Upon considering the totality of the circumstances, the Court finds that the Petitioner's confession was voluntary. Accordingly, the Court also finds that the

---

[53] S.   Test., Sentencing Hr'g Tr. 10:22–24, 11:1–7, Nov. 13, 2008.
[54] Syl. pt. 5, *State v. Moore*, 193 W. Va. 642, 457 S.E.2d 801 (1995).
[55] *State v. Hall*, 174 W. Va. 599, 601, 328 S.E.2d 206, 208 (1985).
[56] State's Ex. 2, Omnibus Hr'g.
[57] *Id.*

00012

Petitioner cannot satisfy the second prong of *Strickland* and cannot prove that, if Mr. Sullivan would have moved to suppress the statement, the results would have differed.

43. Further, the record does not indicate that the Petitioner's incriminating statement caused him to plead guilty. The statement is not mentioned at the plea hearing or the sentencing hearing. In the plea agreement, the State agreed to drop several counts in Criminal Action 08-F-417. By not pleading guilty, the Petitioner could have served more than seventy-five years in prison. Having pled guilty, the Petitioner will serve, at most, fifty-five years.

## CONCLUSIONS OF LAW

44. Based upon the testimony of the Petitioner and his *Losh List* previously filed, the Court finds and concludes that the Petitioner has made a knowing and intelligent waiver of his rights and of all cognizable habeas corpus grounds that he did not assert in his *Petition* and/or during the omnibus hearing after competent representation of counsel in making the waiver.

45. Based upon review of the *Petition*, the underlying criminal record, the evidence offered by the State and by the Petitioner in support of his *Petition*, and the applicable law, the Court makes the following conclusions of law:

    a. The Petitioner had a sufficient present ability to consult with his lawyer with a reasonable degree of rational, as well as factual, understanding of the proceedings against him at the time he entered his guilty plea. Thus, the Petitioner was mentally competent to enter his guilty plea.

    b. The Petitioner has failed to show that Mr. Sullivan's performance adversely affected the outcome of the Petitioner's case, and the Petitioner has failed to demonstrate that the alleged errors resulted in a reasonable probability that, in the

13

00013

absence of such alleged errors, the result of the proceedings would have differed.

Thus, the Petitioner has failed to satisfy the second prong of *Strickland.*

## DECISION

Accordingly, the Court does hereby **ORDER** that the *Petition* be **DENIED** and this action be **DISMISSED** and **STRICKEN** from the docket of this Court. The objection of the Petitioner is noted and preserved. The Clerk is **DIRECTED** to send a certified copy of this *Final Order* to the Kanawha County Prosecuting Attorney's Office and to the parties and counsel of record.

**ENTERED** this /5 day of July 2015.

Louis H. Bloom, Judge

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF CIRCUIT COURT OF SAID COUNTY AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY FROM THE RECORDS OF SAID COURT
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS _____ DAY OF _____

CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA



Date: 7/1/15
Certified copies sent
___ counsel of record
___ parties
___ other

By: _____

14

00014